## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CHRISTOPHER J. SILLAS,**

      **Plaintiff,**

      **v.**                                                                 **Civ. No. 15-256 JCH/KK**

**THE GEO GROUP, INC.,**
**CORIZON, INC.,**
**MARK ELLIOT WALDEN, M.D.,**
**in his official capacity,**
**WARDEN TIMOTHY B. HATCH,**
**in his official capacity,**
**and multiple JOHN DOES in their**
**official capacities,**

      **Defendants.**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant Corizon, Inc.'s Motion To Dismiss for Failure To State a Claim Pursuant to FRCP 12(b)(6).* [Doc. 16] Pursuant to a stipulated extension of time until June 5, 2015, Plaintiff filed a response on that date. [Doc. 17] Then, without further extension or permission, Plaintiff filed an amended response on June 8, 2015. [Doc. 19 (attaching an exhibit which Plaintiff states was inadvertently omitted from the original response)] Defendant Corizon filed a reply on June 19, 2015. [Doc. 20]

Having considered the motion, briefs, and relevant law,[1] the Court concludes that Defendant Corizon's motion should be granted.

---

[1] The Court expressly states that it excludes the exhibit attached to Plaintiff's Amended Response. The Court does not consider that exhibit or any other matters outside the pleadings; therefore, Corizon's 12(b)(6) motion has not been converted into a summary judgment motion. *See* Fed. R. Civ. P. 12(d).

## BACKGROUND

The following is a statement of facts, viewed in the light most favorable to Plaintiff.

Plaintiff was incarcerated at Northeast New Mexico Detention Facility ("NENMDF"), which was operated by Defendant Geo Group.  Defendant Corizon was responsible for providing medical care to inmates pursuant to a contract with an agency of the State of New Mexico.  Defendant Walden was the medical doctor responsible for providing medical care to inmates.  Defendant Hatch was the warden of NENMDF.  Defendant John Does were prison guards and other staff employed by Geo Group.

Shortly after his transfer to NENMDF in February 2011, Plaintiff began to feel ill.  After he complained to prison staff, he was taken to medical facilities at NENMDF but an examination did not reveal that Plaintiff was ill.

Plaintiff continued to complain to staff that he was ill.  He was put alone into a segregated "dry cell," without clothes, and with a bare mattress.  "Unbeknownst to Plaintiff, he was suffering from a perforated gastric ulcer, a potentially life-threatening ailment if not immediately treated."  [Doc. 15, p. 4, ¶ 30]  The only medicine provided by prison staff was ibuprofen, a non-steroidal anti-inflammatory drug that can exacerbate ulcers.  For three days Plaintiff was under 24-hour surveillance by a prison guard, during which time Plaintiff vomited blood and suffered in excruciating pain in full view of the prison guard.  After those three days, Plaintiff was unable to move or talk and lay on the floor; upon pleas of nearby prisoners, prison staff finally requested that a medical doctor examine Plaintiff.  Once a medical doctor examined Plaintiff, he was immediately transported to hospital and rushed into surgery for a perforated gastric ulcer.

After remaining in the hospital for approximately ten days, Plaintiff was returned to NENMDF but was not provided any further medical treatment.  He was bedridden for approximately two weeks without any medical assistance; Plaintiff was forced to clean his own surgical wounds and to remove the staples in his abdomen himself.  Plaintiff began the grievance process, but never received a response from the staff at NENMDF.

Approximately thirty days after Plaintiff was returned to NENMDF, in early April of 2011, Plaintiff requested further medical treatment.  Staff at NENMDF gave Plaintiff a form which they explained was a waiver for medical services at NENMDF.  Plaintiff signed the waiver, because it was "common knowledge" that Defendant Walden sexually abused prisoners and Plaintiff did not want to suffer such abuse, and because Plaintiff believed the waiver would enable him to receive medical treatment from outside NENMDF.  After he signed the waiver, NENMDF staff informed him that he had waived all medical services, inside or outside of NENMDF, so that no medical services would be provided.  In the days following Plaintiff's release from the hospital, Plaintiff's treating physician from the hospital and Plaintiff's mother and stepfather tried, unsuccessfully, to persuade prison staff to allow Plaintiff to receive follow-up medical care and treatment.

On March 12, 2014, Plaintiff filed a complaint in the Eighth Judicial District, Taos County, New Mexico.  [Doc. 1, p. 5]  Defendant Corizon filed a Notice of Removal on March 30, 2015.[2]  [Doc. 1]  The Notice of Removal does not show that other Defendants joined in or consented to removal.  [Doc. 1, p. 2 (asserting that the other Defendants had not yet been properly served, and therefore their consent to removal was not sought)]  The only Defendant for

---

[2] The Notice of Removal contains a typographical error--stating that the state court complaint was filed on March 12, 2015, instead of March 12, 2014.  [Doc. 1, p. 1]

whom an appearance has been entered in this Court is Corizon.  [Docs. 2, 22-23]  No answer or other pleading has been filed by any Defendant other than Corizon.

On April 6, 2015, Corizon filed a motion to dismiss for failure to state a claim.  [Doc. 8] On April 27, 2015, Plaintiff filed an Amended Complaint.  [Doc. 15]  The Amended Complaint asserts one count under § 1983 for "Violation of 8th Amendment and Plaintiff's Right to Medical Care."  After the Amended Complaint was filed, Corizon filed a second motion to dismiss for failure to state a claim.  [Doc. 16]

The Court concludes that it has jurisdiction.  *See* 28 U.S.C. § 1441(a) (federal question).

## LEGAL STANDARDS

On a motion to dismiss, the court assesses the legal sufficiency of the allegations contained within the four corners of the complaint.  *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).  Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The court accepts as true all well-pleaded facts, viewing them in the light most favorable to the plaintiff and allowing all reasonable inferences in favor of the plaintiff.  *Archuleta*, 523 F.3d at 1283.  This deference is inapplicable to legal conclusions in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see Iqbal*, 556 U.S. at 678.  The court does not accept as true a legal conclusion couched as a factual allegation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint "does not need detailed factual allegations," but the factual allegations "must be enough to raise a right to relief above the speculative level."  *Id*.  The complaint must

go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Conclusory statements unsupported by factual allegations are not sufficient.  *Id.*; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555 (holding that mere "labels and conclusions" and "formulaic recitation of the elements of a cause of action" are insufficient); *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Looking within the four corners of the complaint, the Court determines whether there are "sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Archuleta*, 523 F.3d at 1281, 1283 (quoting *Twombly*, 550 U.S. at 556).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins*, 519 F.3d at 1247.  The Tenth Circuit observed that "plausible" cannot mean "likely to be true," but "must refer to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

The Eighth Amendment is violated if the defendant's "'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "To prevail on a claim under 42 U.S.C. § 1983, however, 'inadvertent failure to provide adequate medical care' is not enough, nor does 'a complaint that a physician has been negligent in diagnosing or treating a medical condition … state a valid claim of medical mistreatment under the Eighth Amendment.'" *Id.* (quoting *Estelle*, 429 U.S. at 104)).  Instead, the plaintiff must

"'allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'"  *Id*. (quoting *Estelle*, 429 U.S. at 106).

"Deliberate indifference" comprises an objective and a subjective component.  *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The objective component requires a showing that the alleged deprivation was "'sufficiently serious.'"  *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The subjective component may be shown if "a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, *e.g.*, a gangrenous hand or a serious laceration," or if "a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency."  *Self*, 439 F.3d at 1232.  The subjective component is "not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."  *Id*.  "In the end, the 'negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.'"  *Id*. at 1233 (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)).  The subjective component "presents a high evidentiary hurdle," requiring a plaintiff to show a state of mind akin to recklessness in the criminal law; the defendant "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Self*, 439 F.3d at 1231 (quoting *Farmer*, 511 U.S. at 837); *see Sealock*, 218 F.3d at 1209 (explaining that plaintiff must show that defendant knew of and disregarded an excessive risk to health or safety).

**DISCUSSION**

**I.  Removal to this Court**

Defendant Corizon states that it was served in state court on March 11, 2015.  [Doc. 1, p. 1]  On March 30, 2015, Corizon filed a Notice of Removal to this Court.  [Doc. 1]  Defendant Corizon had thirty days "after receipt by or service on" it to file a notice of removal.  28 U.S.C. § 1446(b)(2)(B); *see* 28 U.S.C. § 1446(b)(1).  The Court concludes that Defendant Corizon's notice of removal was timely.

When removal is based on § 1441(a), joinder in or consent to removal is required from "all defendants who have been properly joined and served."  28 U.S.C. § 1446(b)(2)(A).  Corizon's Notice of Removal does not show that other Defendants joined in or consented to removal; the Notice alleges that the other Defendants were not properly served, and therefore their consent was neither sought nor required.  [Doc. 1, p. 2]  Plaintiff did not dispute the allegation that other Defendants had not been properly served.  The complaint filed in state court does not certify that it was served.  [Doc. 1, pp. 5-8]  If Plaintiff wanted to argue that the Notice of Removal was defective, Plaintiff would have been required to first establish that the other Defendants were properly served before the Notice of Removal was filed.  *Cf. Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1183-84 (10th Cir. 2014) (placing burden on plaintiff to establish date and fact of service when challenging timeliness of removal or objecting that removal was improper because all defendants did not join in or consent to removal).  The "clear statutory language" requires "only *served* defendants to consent to removal."  *Sheldon v. Khanal*, 502 Fed. Appx. 765, 770 (10th Cir. 2012) (unpublished).[3]

Even if there were any defect in removal procedure, Plaintiff waived it by not raising it within thirty days after the Notice of Removal was filed.  *See id.* at 770.  "A motion to remand

_____

[3] The Court cites this and other unpublished opinions for their persuasive value.  See 10th Cir. R. 32.1(A).

the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  28 U.S.C. § 1447(c).

The Court concludes that removal to this Court was timely and proper.  Alternatively, the Court concludes that Plaintiff waived any defect in the removal procedure.

## II.  Adequacy of Amended Complaint Under Rule 12(b)(6)

Defendant Corizon argues that Plaintiff has not alleged that medical staff at NENMDF failed to provide appropriate treatment or otherwise committed any acts or omissions for which Plaintiff can maintain a claim against Corizon.  [Doc. 16, p. 2]  The Amended Complaint alleges that shortly after his arrival at NENMDF he complained of being ill and was taken to the medical facilities at NENMDF for an examination, but the "results of the examination did not reveal that Plaintiff was ill."  [Doc. 15, p. 4, ¶¶ 24-27]  The Amended Complaint also alleges that after three days a medical doctor examined Plaintiff and he was immediately taken to hospital for surgery. [Doc. 15, p. 5, ¶ 36]  Corizon argues that the Amended Complaint does not specify which members of the medical staff at NENMDF are alleged to have violated his civil rights.  [Doc. 16, pp. 2-3]  Further, the only medical doctor mentioned in the Amended Complaint is Defendant Walden—but Corizon argues that the complaint never alleges that Walden treated Plaintiff, that Walden was indifferent to Plaintiff's condition, or that Walden was in any other way negligent with respect to Plaintiff's treatment.  [Doc. 16, p. 3]

Plaintiff's amended response [4] argues generally that Corizon, "through its acts and omissions, violated Plaintiff's constitutional right to be free from cruel and unusual punishment,

---

[4] Plaintiff's amended response attaches an exhibit, purported to be part of Plaintiff's medical records. [Doc. 19, p. 1; Doc. 19-1]  The Court excludes that exhibit, and explicitly states that it does not consider or rely on that exhibit in ruling on Corizon's motion.  Instead, the Court determines under Rule 12(b)(6)

as protected by the 8th Amendment and in violation of 42 U.S.C. § 1983, by recklessly delaying Plaintiff's receipt of medical treatment and then completely withholding medical treatment following Plaintiff's emergency surgery." [Doc. 19, p. 2]

The Court discerns three sets of allegations, concerning three different periods of time, that might constitute an assertion of an Eighth Amendment violation by Corizon:  (1) shortly after Plaintiff was transferred to NENMDF, when he felt ill and was taken for an examination; (2) three days later, when Plaintiff was examined by a medical doctor and was immediately transported to the hospital; and (3) when Plaintiff was returned to NENMDF after surgery and was not provided any follow-up treatment.

The first set of allegations asserts that Plaintiff began to feel ill and was taken to medical facilities for an examination.   [Doc. 15, p. 4, ¶¶ 23-27]   But the Amended Complaint is insufficient to state a claim, because it does not allege who examined Plaintiff—whether it was Defendant Walden, an employee of Corizon, or even someone else.   In § 1983 cases, "it is particularly important … that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins*, 519 F.3d at 1249-50.   Neither Corizon nor any other person is given fair notice here; the allegation is simply that someone examined Plaintiff at the medical facilities.   Further, the Amended Complaint alleges that the examination "did not reveal that Plaintiff was ill." [Doc. 15, p. 4, ¶ 27]   There is no allegation that anyone should have determined—at this time—that Plaintiff was in fact ill, that he had an ulcer, or that he had a perforated ulcer.   *See Self*, 439 F.3d at 1233 (emphasizing that the subjective inquiry is limited to a doctor's knowledge at the time— not to the ultimate treatment necessary).   Nor is there an allegation that the examination was

---

whether the complaint alone is sufficient to state a claim.  The Court thus does not convert this decision into a summary judgment ruling.  See *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).

inadequate.  Plaintiff admits that at this time his condition was not known by him, either.  [Doc. 15, p. 4, ¶ 30]  The Amended Complaint does not specify or describe any symptoms.  There are no allegations to show that Corizon was "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed, and that Corizon did "also draw the inference."  *Self*, 439 F.3d at 1231.  Taking all well-pleaded factual allegations as true, the Amended Complaint does not show that Corizon knew of, and disregarded, an excessive risk to Plaintiff's health.  *See id.*  Absent evidence of actual knowledge or recklessness, Plaintiff could not show the requisite state of mind.  *See id.* at 1233.  In addition, without a claim that the examination was inadequate, there is not even an allegation of misdiagnosis or negligence here— much less an allegation sufficient to assert violation of the Eighth Amendment.  *See Self*, 439 F.3d at 1233 (explaining that negligent failure to provide adequate medical care, even if it would constitute medical malpractice, does not give rise to an Eighth Amendment violation); *Sealock*, 218 F.3d at 1211-12 (stating that misdiagnosis does not amount to constitutional violation).

The second set of allegations relevant to a claim against Corizon concerns the time three days later, when "a medical doctor" examined Plaintiff and "immediately" had Plaintiff transported to the hospital.  [Doc. 15, p. 5, ¶ 36]  These allegations, again, fail to make clear who examined Plaintiff and effected his transfer to the hospital, thus failing to give the requisite "fair notice as to the basis of the claims."  *Robbins*, 519 F.3d at 1249-50.  But even more important, taking these allegations as true, there is no allegation whatsoever that this doctor was at fault in any way; there certainly could be no showing of either the subjective or objective component of a deliberate indifference claim.  Plaintiff does not allege that the doctor should have acted differently; Plaintiff cannot fault a doctor who "immediately" had Plaintiff taken to the hospital.

The third set of allegations concerns the time when Plaintiff was returned to NENMDF after surgery, and was provided no follow-up treatment despite having major abdominal surgery. [Doc. 15, pp. 5-6, ¶¶ 38-42, 46-52]   Although the Amended Complaint generally alleges that Corizon was responsible for providing medical care at NENMDF, and that Walden was the medical doctor responsible for providing that care, the Amended Complaint again fails to "make clear exactly who is alleged to have done what" at this time, so as to provide "fair notice" of the claim. *Robbins*, 519 F.3d at 1249-50.   These conclusory statements unsupported by factual allegations are not sufficient to state a claim. *See Iqbal*, 556 U.S. at 678; *Hall*, 935 F.2d at 1110. Although the Amended Complaint makes disturbing allegations that Plaintiff was bedridden, received no medical assistance at all, was forced to clean his surgical wounds, and was forced to remove the staples in his abdomen, there are no allegations that Corizon, or any specified employee of Corizon, both knew of the facts and disregarded an excessive risk to Plaintiff's health so as to show both the subjective and objective components of a deliberate indifference claim. *See Self*, 439 F.3d at 1231.   Assuming arguendo that Corizon would have had a duty to provide follow-up care, the Amended Complaint does not even allege that Corizon was aware that Plaintiff had undergone surgery—much less that he had been returned to NENMDF and might need follow-up care there.   These allegations about the lack of follow-up care appear to be directed not at Corizon, but at prison staff for denying access to medical care. *See Self*, 439 F.3d at 1231; *Sealock*, 218 F.3d at 1211-12.

The Court emphasizes that it is not ignoring allegations that, after the initial examination shortly after Plaintiff was transferred to NENMDF, Plaintiff continued to complain that he was ill, and for three days Plaintiff vomited blood and suffered.   [Doc. 15, pp. 4-5, ¶¶ 28-35]   But missing entirely from the Amended Complaint is any allegation that Corizon knew of this

situation.  More specific allegations show that this claim is directed against the prison guards, "Defendants John Does," for failing to request medical help.  [Doc. 15, p. 8, ¶¶ 61-62]  The Amended Complaint admits that Corizon "did not directly witness the vomiting of blood by Plaintiff," but alleges that "these Defendants are nevertheless still liable as such knowledge is imputed to them through Defendants John Does [prison guards], who were aware of the large amount of blood being expelled by Plaintiff."  [Doc. 15, p. 8, ¶ 63 (emphasis added)]  Plaintiff's response further asserts that "Defendant … failed to train and supervise the prison staff responsible for monitoring Plaintiff's condition."  [Doc. 19, p. 3 (emphasis added)]  There are two problems with Plaintiff's position on these points, if Plaintiff intends the emphasized language to refer to Corizon.

First, as Corizon's reply argues, the Amended Complaint does not allege that Corizon was responsible for training and supervising the prison staff.  [Doc. 20, p. 1]  It is Plaintiff's response that makes this assertion, thus improperly attempting to alter or add to the factual allegations in the Amended Complaint.  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations to be true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (emphasis added); *Rocha v. CCCF Admin.*, 408 Fed. Appx. 141, 144 & n.4 (10th Cir. 2011) (unpublished) (stating that correct standard for Rule 12(b)(6) motion is whether the complaint alone, within its four corners, contains sufficient factual allegations to state a plausible claim for relief).  Plaintiff may not rely on new factual allegations in his response to alter or supplement the Amended Complaint.  *See Issa v. Comp USA*, 354 F.3d 1174, 1179 (10th Cir. 2003).

Second, Plaintiff improperly attempts to rely on principles of vicarious liability and respondeat superior.  In addition to asserting that knowledge of prison guards is imputed to

Corizon, the Amended Complaint explicitly relies on the doctrine of respondeat superior.  [Doc. 15, ¶¶ 6, 63]  But § 1983 does not recognize a concept of respondeat superior; a "defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *see Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).  Even if the Amended Complaint adequately alleged that Corizon was responsible for training and supervising prison guards and failed to properly meet this responsibility, the Court would disregard such conclusory assertions, unsupported by specific factual allegations.  *See Iqbal*, 556 U.S. at 678; *Archuleta*, 523 F.3d at 1283.  There would still be insufficient factual allegations to permit the Court to "infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679; *see Robbins*, 519 F.3d at 1247 (stating that complaint must allege facts sufficient to state a claim which is plausible—rather than merely conceivable—on its face).  An "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient to survive a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

An additional allegation relating to this three-day period (after the initial examination, and before being transported to hospital) is that the only medicine provided was ibuprofen, which can exacerbate ulcers.  [Doc. 15, p. 4, ¶ 31]  But the Amended Complaint specifically alleges that it was "prison staff" who provided the ibuprofen; there is no allegation that Corizon was involved.  [Doc. 15, p. 4, ¶ 31]  The Amended Complaint uses the term "prison staff" elsewhere to refer to prison guards—not Corizon employees, for whom the term "medical staff" is used.[5]  [Doc. 15, ¶¶ 35, 48, 49, 51]  Plaintiff's response, however, asserts that he was taken to "Corizon's medical facilities at the prison and only provided with ibuprofen."  [Doc. 19, p. 2]  It

---

[5] The Court observes that Plaintiff's response similarly distinguishes "prison staff" from "medical staff." [Doc. 19, pp. 2, 3]

is unclear from use of the passive voice whether Plaintiff's response intends to imply that Corizon was involved in providing ibuprofen.  To the extent that Plaintiff's response might be so construed, the Court states that Plaintiff's response may not alter or add to the allegations of his complaint.  *See Issa*, 354 F.3d at 1179.  And even if the Amended Complaint were clear enough to allege that Corizon staff gave the ibuprofen to Plaintiff, the Amended Complaint still fails to meet the requirement of specifying who provided the ibuprofen.  *See Robbins*, 519 F.3d at 1249 (requiring complaint specify "who did what to whom").

Corizon's reply raises one further issue, arguing that Plaintiff's response asserts that "Defendant … fraudulently induced Plaintiff into signing a waiver to any form of medical treatment."  [Doc. 19, p. 3]  Corizon argues that the Amended Complaint alleges that it was prison staff, not Corizon, who obtained the waiver of medical treatment.  [Doc. 20, p. 2]  The Court concludes from the language used in the Amended Complaint that the references to "staff at NENMDF" cannot reasonably be interpreted to refer to Corizon.  [Doc. 15, p. 6, ¶¶ 46-50; Doc. 15, p. 9, ¶ 59]  And Plaintiff may not alter or add to the allegations of his complaint by making factual allegations in his response.  *See Issa*, 354 F.3d at 1179.  In addition, the Amended Complaint once again fails to "make clear exactly who is alleged to have done what" at this time, so as to provide "fair notice" of the claim.  *Robbins*, 519 F.3d at 1249-50.

The Court concludes that the Amended Complaint fails to meet the pleading standards of *Twombly*, *Iqbal*, and *Robbins*.  Taking all well-pleaded factual allegations as true, the Amended Complaint fails to state an Eighth Amendment claim against Corizon.  The Court will grant Corizon's motion to dismiss under Rule 12(b)(6).

### III.  Statute of Limitations

Corizon argues that Plaintiff's claims against Corizon are barred by the statute of limitations.  Interpreting the Amended Complaint as basing the claim against Corizon on the initial examination in February 2011 and a second examination three days later, Corizon argues that claims against Corizon accrued before March 12, 2011, and are therefore barred by the three-year statute of limitations.  [Doc. 16, pp. 6-7]  Plaintiff filed his complaint in state court on March 12, 2014.

Plaintiff responds that his claim, "if viewed as a continuing tort and encompassing Defendant's complete failure to provide Plaintiff with any follow-up medical care, extends several weeks into the period permitted under New Mexico's three-year statute of limitation." [Doc. 19, p. 4]  Plaintiff relies on the exhibit attached to his amended response.  The Court specifically excludes and does not consider that exhibit, relying only on the Amended Complaint to determine the dates of the conduct alleged.  *See* Fed. R. Civ. P. 12(d); *Jackson*, 952 F.2d at 1261.

"Statutes of limitations reflect a balancing of the interest favoring the vindication of valid claims and the interest barring the prosecution of stale ones."  *Fogle v. Slack*, 419 Fed. Appx. 860, 865 (10th Cir. 2011) (unpublished).  § 1983 does not contain a statute of limitations.  This Court takes the statute of limitations from New Mexico's personal injury statute, providing a limitations period of three years from the time the cause of action accrues.  *Wilson v. Garcia*, 471 U.S. 261, 280 (1985), *aff'g Garcia v. Wilson*, 731 F.2d 640 (10th Cir. 1984), *superseded by statute on other grounds*, 28 U.S.C. § 1658; *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014); *see* NMSA 1978, § 37-1-8 (1976).  Federal law determines the date on which the claim accrues.  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  The

Tenth Circuit treats the statute of limitations under § 1983 as an affirmative defense, an issue which can properly be resolved under Rule 12(b)(6). *Canfield v. Douglas Cnty.*, ___ Fed. Appx. ___, 2015 WL 5692177, *2 (10th Cir. 2015) (unpublished).

"In general, under the federal discovery rule, claims accrue and '[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'" *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)).  In particular, a "civil rights action accrues when facts that would support a cause of action are or should be apparent." *Id.* (internal quotation marks omitted).  The plaintiff need not have conclusive evidence of the cause of injury, or know all of the evidence ultimately relied on, before the statute of limitations is triggered. *Nicholas v. Boyd*, 317 Fed. Appx. 773, 778 (10th Cir. 2009) (unpublished).  The test for date of accrual is objective, with the focus "on whether the plaintiff knew of facts that would put a reasonable person on notice." *Alexander*, 382 F.3d at 1216.  The plaintiff "must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Id.*  The "'cause of action accrues even though the full extent of the injury is not then known or predictable.'" *Varnell*, 756 F.3d at 1216 (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).  Otherwise, the statute of limitations "would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391.

To resolve the statute of limitations issue, it is necessary to determine when Plaintiff's cause of action accrued.  The Court observes that some allegations in the Amended Complaint concern time periods within the statute of limitations (e.g., allegations about the waiver of

medical services, in April 2011); however, the relevant question is whether the claim against Corizon accrued outside the three-year statute of limitations.   As discussed above, the Court discerns three sets of allegations, concerning three different periods of time, that might constitute an assertion of an Eighth Amendment violation against Corizon:  (1) shortly after Plaintiff was transferred to NENMDF, when he felt ill and was taken for an examination; (2) three days later, when Plaintiff was examined by a medical doctor and was immediately transported to the hospital; and (3) when Plaintiff was returned to NENMDF after surgery and was not provided any follow-up treatment.  The examination shortly after Plaintiff was transferred to NENMDF occurred in February 2011.  The second examination occurred three days later.  These two sets of allegations concern a time more than three years before Plaintiff filed his complaint in state court on March 12, 2014.

The Court concludes that Plaintiff knew or had reason to know of any claim based on these two incidents at the time they occurred, which was before March 12, 2011.  *See Alexander*, 382 F.3d at 1215.  Plaintiff knew at the time of the initial examination, and again at the time of the second examination three days later, of the facts supporting his claim that he had a medical problem which was not properly addressed.  In addition, the Amended Complaint shows that the date of surgery was, at latest, in the first three days of March 2011—three days after Plaintiff's admission to NENMDF in February 2011.  Certainly by the date of surgery a reasonable person, through exercise of reasonable diligence, would have been put on notice of the facts constituting a claim against Corizon for failure to treat him earlier or differently at the time of those two examinations.  *See Alexander*, 382 F.3d at 1216.  The claim accrued even if Plaintiff did not then have conclusive evidence of the cause of injury, or know all of the evidence which might ultimately be relied on.  *See Nicholas*, 317 Fed. Appx. at 778.  Nor was it required that the full

extent of Plaintiff's injury was known or predictable for the cause of action to accrue.  *See Varnell*, 756 F.3d at 1216.

To the extent that Plaintiff's claim is based on these two instances, the claim accrued before March 12, 2011.  Unless the continuing violation doctrine applies, Plaintiff's claim against Corizon is barred by the statute of limitations.

The same conclusion may be reached regarding the third set of allegations, concerning the time when Plaintiff was returned to NENMDF after surgery and was provided no follow-up treatment.  The Amended Complaint is notably deficient in clearly setting forth critical dates.  But as Corizon observes, it can be discerned from the Amended Complaint that Plaintiff was returned to NENMDF in early March 2011—three plus ten days after Plaintiff's transfer to NENMDF in February 2011, and thirty days before "early April of 2011."  [Doc. 16, pp. 6-7; Doc. 15, pp. 4-6]  The Amended Complaint alleges that during this time Plaintiff was bedridden for the first two weeks, was forced to clean his own surgical wounds, and was forced to remove his surgical staples himself.  There are no allegations that the need for follow-up treatment only arose toward the end of this two-week period.  The Amended Complaint alleges no facts to show that it was only after March 11, 2011, that a reasonable person would be on notice that he was not receiving any follow-up care and that he needed such care.  The cause of action for lack of follow-up care would then have accrued in early March, and a claim on this basis would be barred by the statute of limitations.  The Court need not make a definitive decision on this basis, however; as discussed above, the Amended Complaint fails to state a claim against Corizon based on lack of follow-up care.

In response to Corizon's argument that his claim is barred by the statute of limitations, Plaintiff merely suggests that his claim might be "viewed as a continuing tort … encompassing

Defendant's complete failure to provide Plaintiff with any follow-up medical care."  [Doc. 19, p. 4]  In *Fogle*, the Tenth Circuit indicated that it was the plaintiff's burden to establish that the continuing violation doctrine applies.  *Fogle*, 419 Fed. Appx. at 864.

The Tenth Circuit first recognized the continuing violation doctrine in a Title VII case. *McCormick v. Farrar*, 147 Fed. Appx. 716, 720 (10th Cir. 2005).  The doctrine is a "general rule that has evolved in the Circuits that a plaintiff alleging a continuing violation of Title VII may file charges with the EEOC at any time during which the alleged continuing violation has taken place."  *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 348 n.15 (10th Cir. 1975).  If at least one instance of the discriminatory practice occurs within the filing period, the continuing violation doctrine allows a plaintiff to challenge incidents outside the statutory time limits of Title VII if the incidents are "'sufficiently related'" to constitute a "'continuing pattern of discrimination.'" *Fogle*, 419 Fed. Appx. at 864 (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)); *see McCormick*, 147 Fed. Appx. at 720.

The Tenth Circuit has never held that the continuing violation doctrine applies in § 1983 cases.  *Canfield*, 2015 WL 5692177, *4; *see Fogle*, 419 Fed. Appx. at 864 (declining to adopt doctrine); *Loard v. Sorenson*, 561 Fed. Appx. 703, 706-07 (10th Cir. 2014) (unpublished) (assuming without deciding that doctrine applied); *McCormick v. Farrar*, 147 Fed. Appx. 716, 719-20 (10th Cir. 2005) (unpublished) (assuming without deciding that doctrine applied).   In *Loard* and *McCormick*, the Tenth Circuit held that the acts causing the alleged injuries occurred outside the limitations period; assuming arguendo the doctrine applied, a complaint is not timely merely because continuing effects of the prior act occur within the limitations period.  In *Fogle*, the Tenth Circuit held that the decisions at issue were "of a discrete nature and that, in many instances, segregation decisions were made by different decision makers across three different

correctional facilities, thus making it inappropriate to aggregate all such decisions into one continuing violation for limitations purposes." *Fogle*, 419 Fed. Appx. at 864-65 (addressing incarcerated plaintiff's claims regarding segregation decisions made over three-year period). Most of Fogle's claims were therefore time-barred and were properly dismissed, because they occurred outside the statute of limitations. *Id*. at 864-65.

Based on the Court's conclusion above that the allegations concerning follow-up care fail to state a claim against Corizon, it obviously would be improper to aggregate these allegations with allegations about the earlier two examinations. The continuing violation doctrine therefore could not save Plaintiff's claim against Corizon.

But even if the continuing violation doctrine were applied in this case, it would be inapplicable when "discrete decisions or discrete conduct" are involved. *Fogle*, 419 Fed. Appx. at 865. The Court concludes that, to the extent that allegations about lack of follow-up care might be construed as claims against Corizon, this case involves "discrete decisions or discrete conduct" occurring at different times, so that it would be inappropriate to aggregate into one continuing violation three sets of allegations: the initial examination, the examination three days later, and follow-up care after surgery and return to NENMDF. Since Plaintiff never specified which person made decisions at any of these times, it may well be, as in *Fogle*, that it would be inappropriate to aggregate decisions made by different decisionmakers at different times. *See Fogle*, 419 Fed. Appx. at 864-65. Plaintiff provides no reasoned argument that diagnosis preceding surgery and routine follow-up care, possibly involving different persons, should be viewed as one continuous undifferentiated event.

The Court concludes that Plaintiff has not carried his burden to show that the continuing violation doctrine is applicable or that it is appropriate to aggregate a number of separate

instances of conduct.  The Court will grant Corizon's motion to dismiss on the alternative ground that Plaintiff's claim against Corizon is barred by the statute of limitations.

## CONCLUSION

The Court concludes that the Amended Complaint fails to state a claim against Corizon. As an independent and alternative basis, the Court concludes that Plaintiff's claim against Corizon is barred by the statute of limitations.  For each of these reasons, the Court grants Corizon's motion to dismiss.

**IT IS THEREFORE ORDERED** that *Defendant Corizon, Inc.'s Motion To Dismiss for Failure To State a Claim Pursuant to FRCP 12(b)(6)* [Doc. 16] is **GRANTED.**

**UNITED STATES DISTRICT JUDGE**